R. SCOTT RASMUSSEN
Nevada Bar No. 6100
**MURCHISON & CUMMING LLP**
 350 S. Rampart Blvd., Suite 320
Las Vegas, Nevada 89145
Tele: 702.360.3956
Fax:  702.360.3957
Attorneys for Plaintiffs, Georgiou Family
Trust; Byron Georgiou individually and as
trustee of the Georgiou Family Trust; and
Benjamin Hill Realty, LLC

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Georgiou Family Trust, a Nevada trust; Byron Georgiou, as an individual and as trustee of the Georgiou Family Trust; Benjamin Hill Realty, LLC, a Nevada limited liability company.<br><br>Plaintiffs,<br><br>    v.<br><br>Phillip V. Ruthen, an individual; Shaw Industries Inc., a corporation; L. Lake Jordan, an individual; Suncrest Stone Products, LLC, a business entity; Jeffrey W. Stevens, an individual;<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br>1) **VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND SEC RULE 10B-5;**<br>2) **VIOLATION OF NRS 90.295;**<br>3) **BREACH OF FIDUCIARY DUTY;**<br>4) **FRAUD;**<br>5) **BREACH OF CONTRACT (COUNT ONE);**<br>6) **BREACH OF CONTRACT (COUNT TWO);**<br>7) **BREACH OF CONTRACT (COUNT THREE);**<br>8) **RESCISSION;**<br>9) **NEGLIGENCE;**<br>10) **ACCOUNTING; AND,**<br>11) **FRAUDULENT TRANSFER/CONVERSION**<br>        **JURY DEMANDED** |

**COME NOW PLAINTIFFS** Georgiou Family Trust, Byron Georgiou and Benjamin Hill Realty, LLC (hereafter collectively referred to as "Plaintiffs" or "Georgiou") who complain and allege as follows against Defendants Phillip V. Ruthen; Shaw Industries Inc.; L. Lake Jordan; Suncrest Stone Products, LLC; Jeffrey W. Stevens; and, Does 1-100 ("Does") (all collectively hereafter referred to as "Defendants") as follows:

## THE PARTIES

1. At all times relevant herein, Plaintiff Byron Georgiou ("Georgiou") was and is an individual residing in the City of Las Vegas, County of Clark, and the State of Nevada.

2. At all times relevant herein, Plaintiff Benjamin Hill Realty, LLC ("BHR") is currently a Nevada limited liability company residing in the State of Nevada with an address of 4471 Dean Martin Drive, # 2009, Las Vegas, Nevada 89103.

3. At all times relevant herein, Plaintiff Georgiou Family Trust ("GFT") dated 6/22/09 ("GFT") is a trust created, based, residing in Nevada. Plaintiff Georgiou is a trustee of GFT and agent thereof authorized to act on its behalf.

4. Plaintiffs, upon information and belief allege that Defendant Phillip V. Ruthen ("Ruthen") is an individual residing in the State of Florida and has done and continues to do business in, cause harm in, and/or commit torts within the County of Clark, State of Nevada. Defendant Ruthen committed the acts complained of in this Complaint intenting to cause effects in the City of Las Vegas, County of Clark, State of Nevada. Upon information and belief and thereon alleged Defendant Ruthen: (1) did and does business in the State of Nevada with respect to the causes of action arising out of his business; (2) did business in the State of Nevada, before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of Nevada with respect to the causes of action that arise from that business, but said business is so continuous and substantial as to make the exercise of jurisdiction reasonable over him.

5.      Plaintiffs, upon information and belief and thereupon so alleged, Defendant Shaw Industries Inc. ("Shaw") is a corporation located in, doing business in, incorporated in, and residing in the State of Georgia.  Upon information and belief and so alleged, Defendant Shaw committed the acts complained of herein intending to cause effects in the City of Las Vegas, County of Clark, State of Nevada. Upon information and belief and so alleged, Defendant Shaw knew or should have known that the acts it committed complained of herein would cause effects in the City of Las Vegas, County of Clark, State of Nevada. Further, Plaintiffs allege that Defendant Shaw: (1) did and does business in the State of Nevada with respect to causes of action arising out of that business; (2) did business in the State of Nevada before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of Nevada with respect to the causes of action that arise from that business,  said business is so continuous and substantial as to make the exercise of jurisdiction reasonable over it.

6.      Plaintiffs, upon information and belief and thereupon so alleged that, Defendant L. Lake Jordan ("Jordan") is an individual residing in and doing business in the City of Valdosta, County of Lowndes, State of Georgia. Upon information and belief and thereupon so alleged Jordan is an active member of the Georgia State Bar.  Upon information and belief and thereupon so alleged, Jordan is an attorney with the law firm Coleman Talley LLP 109 South Ashley Street, PO Box 5437,Valdosta, GA 31603-5437. Defendant Jordan has done and continues to do business in, causes harm in, and/or commits torts within the City of Las Vegas, County of Clark, State of Nevada. Upon information and belief and so alleged, Defendant Jordan committed the acts complained of herein intending to cause effects in the City of Las Vegas, County of Clark, State of Nevada.  Further, Plaintiffs allege that Defendant Jordan: (1) did and does business in the State of Nevada with respect to causes of action arising out of that business; (2) did business in the State of Nevada before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of Nevada with respect to the causes of action that arise from that business, and said business is so

continuous and substantial as to make the exercise of jurisdiction reasonable over him.

7.     Plaintiffs, upon information and belief and thereupon so alleged, at all times relevant, Defendant Jeffrey W. Stevens ("Stevens") is an individual residing in the State of Georgia. Upon information and belief and thereupon so alleged, Defendant Stevens has done and continues to do business in, causes harm in, and/or commits torts within the City of Las Vegas, County of Clark, State of Nevada.  Upon information and belief and so alleged, Defendant Jordan committed the acts complained of herein intending to cause effects in the City of Las Vegas, County of Clark, State of Nevada.  Further, Plaintiffs allege that Defendant Stevens: (1) did and does business in the State of Nevada with respect to causes of action arising out of that business; (2) did business in the State of Nevada before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of Nevada with respect to the causes of action that arise from that business, and said business  is so continuous and substantial as to make the exercise of jurisdiction reasonable over him.

8.     Plaintiffs, upon information and belief and thereupon so alleged, Defendant Suncrest Stone Products, LLC ("SSP" or "Suncrest Stone Products") is and was a limited liability company created in, doing business in, located in, and residing in the City of Fitzgerald, State of Georgia.  Upon information and belief and thereupon so alleged, SSP's current address is 139 SE Benjamin H. Hill Dr., Fitzgerald, Georgia, 31750.  Upon information and belief and thereupon so alleged, SSP not only does business in Georgia, it also does business in, has caused harm in, and/or committed torts within the City of Las Vegas, County of Clark, State of Nevada. Upon information and belief and so alleged, Defendant SSP committed the acts complained of herein intending to casue effects in the City of Las Vegas, County of Clark, State of Nevada.  Further, Plaintiffs allege that Defendant SSP: (1) did and does business in the State of Nevada with respect to causes of action arising out of that business; (2) did business in the State of Nevada before this action was brought with respect to causes of action arising out of that business; and/or (3) does business in the State of Nevada with respect to the causes of action that arise

from that business, and said business is so continuous and substantial as to make the exercise of jurisdiction reasonable over it.

9. Plaintiffs are informed and believe that each of the Defendants is responsible in some manner for the acts or omissions alleged in this complaint, or otherwise caused them damages. Each of the Defendants was the agent or employee of the other Defendants, and in doing the acts alleged in this Complaint was acting in the course and scope of such agency and employment. Each of the defendants engaged in, joined in, conspired, and aided and abetted the other defendants in carrying out the wrongful acts alleged in this Complaint, and each defendant ratified and authorized the wrongful acts of the other Defendants. Plaintiffs request leave of this Court to amend this Complaint to set forth the true names, involvement, and/or capacities, whether individual, corporate, professional, or otherwise, when the same have been ascertained or adequate discovery is produced, provided and/or obtained. Plaintiffs are further informed, believe, and based thereon allege that the unknown defendants have aided, abetted, directly or actively participated in, and/or ratified the conduct complained of herein. Plaintiffs further allege that all of the unknown defendants are responsible for and are a direct and legal cause in some manner of the events, happenings, tortuous conduct, malfeasance and damages complained of herein or referred to, which caused the injuries and damages to Plaintiffs as set forth in this Complaint.

## JURISDICTION AND VENUE

10. Jurisdiction is conferred by Section 27 of the Exchange Act. Claims asserted arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act 15 U.S.C.A. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated under the Act by the SEC, 17 C.F.R. § 240.10b-5.

11. Venue is proper in this district pursuant to Section 27 of the Exchange Act, 15 U.S.C.A. § 78aa and 28 U.S.C.A. § 1391(b). Many of the acts charged in this complaint, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this district. In connection with the acts,

transactions, and conduct alleged, defendants used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets.

12.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendants, who are adverse to one another, are citizens and residents of different states and the amount in controversy exceeds $75,000.

13.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over other claims brought by Plaintiff because they form part of the same case or controversy as the claims over which this Court has original subject matter jurisdiction.

14.    Venue in this judicial district is appropriate pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this district. Separately, venue is proper pursuant to 28 U.S.C.§1391(b)(3) in that all Defendants are subject to the Court's personal jurisdiction.   Plaintiffs also reside in and/or are located in Las Vegas, Nevada which is in the jurisdiction of the above-titled federal district Court.

## NATURE OF THE ACTION

15.    This is an action for securities fraud, breach of contract, breach of fiduciary duty, and fraud under Federal and State laws against Defendants.

## GENERAL ALLEGATIONS
## RELEVANT TO ALL CAUSES OF ACTION

16.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

17.    On June 8, 2017, Ruthen created Plaintiff BHR's predecessor, a Georgia LLC, identified as "Suncrest Fitzgerald, LLC" ("Suncrest Fitzgerald"). He was its organizer and resident agent with a listed address of 341 County Farm Road, Ashburn, GA.

18.    On June 21, 2017, Suncrest Fitzgerald entered into an agreement with Shaw

for the purchase of a piece of property located in Georgia.  The terms of the purchase provided for a sale by Shaw to Suncrest Fitzgerald of land and improvements in exchange for $2,500,000.  Shaw agreed to accept $500,000 in cash and take back a personally guaranteed, interest only loan from Suncrest Fitzgerald for $2,000,000.

19.    On September 8, 2017, Ruthen changed the name of Suncrest Fitzgerald to BHR by filing a certificate of Business Amendment with the Georgia Corporations Division. Having a deal in hand, without the ability to close, Ruthen set about looking for an investor.

20.    Ruthen first met Georgiou in or around January of 2018. During their meeting, Ruthen made many multiple representations to Georgiou regarding the Shaw property purchase.  Ruthen told Georgiou about the opportunity to buy the commercial building/factory owned by Shaw in Ashburn, Georgia ("Shaw Factory").  Ruthen intended that Georgiou would rely upon his representations so as to induce his investment in BHR.  Armed with Georgiou's investment, Ruthen could enable BHR to purchase Shaw's commercial building/factory.

21.    Ruthen specifically asked Georgiou to purchase Membership Units in BHR so that BHR could in turn use the money to purchase the Shaw Factory.  Ruthen promised Georgiou that if he made the investment, he would not have to guaranty the interest only, seller carry-back financing.  To further sweeten the deal, Ruthen promised Georgiou that he would deliver a lease from SSP to occupy the Shaw Factory on favorable market terms and that SSP would install approximately $1.3 million in equipment and improvements.

22.    Ruthen's representations and offers to Georgiou constituted an offer to sell a security under 15 U.S.C.A. §§ 77a, *et seq.*  Plaintiffs are informed, believe and allege thereon that the security offered to Georgiou was unregistered by any federal or state authority.

23.    After their first meeting Ruthen continued to communicate with Georgiou by email and telephone to further his efforts to sell Georgiou an Membership Units in BHR.  They met again in person on February 1, 2018, to discuss the Shaw Factory

opportunity wherein Ruthen provided Georgiou with a proposed term sheet. During their meeting Ruthen promised Georgiou that he would be BHR's sole manager and paymaster.

24.     Thereafter, Jordan, a Georgia attorney was retained to document and complete the deal. No one, however, advised Georgiou that Jordan was also Ruthen's private attorney and that he also represented SSP. Jordan never disclosed to any potential or actual conflict, though he should have given his relationship with Ruthen. Jordan also failed to obtain waivers of potential or actual conflict from Ruthen, BHR, SSP, or Georgiou. Jordan, through his actions, furthered and aided Ruthen in his effort to sell Georgiou an interest in BHR and is therefore also a co-conspirator in Ruthen's effort to defraud Georgiou. Jordan also, with specific intent, aided and abetted in the sale of unregistered securities to Georgiou. Upon information and belief and thereupon so alleged, Jordan's communications with Georgiou amounted to legal advice and/or the practice of law in the State of Nevada despite not being licensed to practice law in Nevada.

25.     Georgiou met Ruthen in Georgia to tour the Shaw Factory and visit SSP (SSP was operating in a nearby location in Ashburn, GA at the time) on February 8, 2018. Ruthen introduced Georgiou to Stevens. Ruthen told Georgiou that he and Stevens owned and operated SSP.

26.     At a meeting prior to February 10, 2018, both Ruthen and Stevens, told Georgiou the Suncrest's business was booming and needed to expand. They promised that Suncrest Stone would take a lease for the Shaw Factory at market rates and make substantial improvements if Georgiou agreed to invest in BHR. By such conduct Stevens furthered and aided Ruthen in his effort to sell Georgiou an interest in BHR and was therefore a co-conspirator in Ruthen's effort to offer and sell a security interest in BHR.

27.     On or around February 10, 2018, Ruthen presented Georgiou with the Purchase Agreement for the Shaw Factory. Ruthen also provided Georgiou with an updated term sheet based on discussions they had concerning the Shaw Factory Purchase.

The updated term sheet provided that that Suncrest Stone would enter into a three-year triple net lease for the Shaw Factory (Term Sheet dated 2/10/18, Exhibit 1) and beginning March 1, 2018, it would pay 12% interest on funds advanced by GFT and pay the interest due on the note to Shaw.

28.    On February 14, 2018, Ruthen and Jordan represented to Georgiou that BHR's operating agreement would name Georgiou as BHR's sole managing member. On February 15, 2018, Jordan promised that his office would prepare such documentation for Nevada Secretary of State as a further inducement to Georgiou's agreement to purchase a security interest in BHR.

29.    Based on the representations made to Georgiou over the phone, by text, email and in writing, as alleged herein, Georgiou agreed to purchase 50% of the ownership securities of BHR and agreed to take ownership of the security in the name of his family trust, GFT.

30.    On February 15, 2018, Jordan sent Georgiou BHR's Certificate of Conversion that was filed with the Nevada Secretary of State converting BHR to a Nevada LLC.

31.    On February 15, 2018, Carrie Tullis, sent Ruthen closing documents for the purchase of the Shaw Factory.

32.    On February 16, 2018, Jordan circulated the final term sheet which had been negotiated and agreed to between Georgiou and Ruthen  which provided that Georgiou would be "paymaster and collect all checks and make payments to Shaw as necessary . . ."

33.    The final agreement to acquire the BHR securities included the following material terms:

    a)    Suncrest Stone was to enter into a three-year triple net lease commencing March 1, 2018; paying monthly interest at a 12% annual rate to GFT and interest at 5% on the Shaw Note;

    b)    Suncrest Stone would invest 1.2 million dollars in equipment and

materials so that Suncrest Stone could commence operations in the Shaw Factory;

      c)    GFT agreed to provide 1.8 million in capital, $700k at closing and the remaining 1.1 million at $100k per week for 11 weeks;

      d)    GFT was entitled to its $1.8 million back after three years; and,

      e)    Georgiou was to be sole paymaster and collect all checks and make payments to Shaw as necessary.

34.    On February 20, 2018, Ruthen sent wire instructions to Georgiou, requesting that $700,000 to the IOLTA account of Coleman Talley for the purchase of the Shaw Factory. At that time, Georgiou understood from representations made by Ruthen and Jordan that he was the sole manager of BHR, and that BHR would take title to the Shaw Factory.

35.    On the following dates monies were sent to the following parties by Plaintiffs:

| Date | Amount | Party |
|---|---|---|
| 2/21/2018 | 700,000.00 | Coleman Talley Trust |
| 2/28/2018 | 100,000.00 | Suncrest Stone Products |
| 3/8/2018 | 100,000.00 | Suncrest Stone Products |
| 3/15/2018 | 100,000.00 | Suncrest Stone Products |
| 3/23/2018 | 100,000.00 | Suncrest Stone Products |
| 3/29/2018 | 100,000.00 | Performance Realty Advisors |
| 6/7/2018 | 25,000.00 | Shaw |
| 7/12/2018 | 25,000.00 | Performance Realty Advisors |
| 9/6/2018 | 25,000.00 | Shaw |
| 1/24/2019 | 15,000.00 | Performance Realty Advisors |
| 4/24/2019 | 8,750.00 | Performance Realty Advisors[1] |
| 8/16/2019 | 5,000.00 | Performance Realty Advisors |
| 9/10/2019 | 50,000.00 | Performance Realty Advisors |

36.    On March 5, 2019, Ruthen, without notice to Georgiou, fraudulently and in breach of his fiduciary duties, executed a Deed in Lieu of Foreclosure, transferring the Shaw Factory back to Shaw despite the fact that GFT had been advancing the interest only payments on the Shaw promissory note.

---

[1] *$8750 was originally wired to Shaw. Ruthen caused the funds to be returned and requested that they be wired to Performance Realty Advisors.

*COMPLAINT*

37.   In executing the Deed in Lieu, Ruthen represented himself as BHR's Manager and that he had the authority to execute the Deed, which is contrary to the representations and commitments made to Georgiou to induce him to purchase the security interest in BHR, by Ruthen and Jordan.

38.   The Deed in Lieu of Foreclosure was recorded on April 16, 2019. Ruthen, however, continued to demand money from Georgiou, ostensibly for the purpose of making the Shaw promissory note payments.  Ruthen told Georgiou that he was making interest payments to Shaw in accordance with the terms of the promissory note despite the fact that he had transferred ownership of the Shaw Factory back to Shaw and had obtained a reliance of liability thereunder.

39.   On April 23rd, 2019, Ruthen requested that Plaintiff provide $8,750 for a property tax payment due on the Shaw Factory despite the fact that Ruthen had transferred the Shaw Factory on March 5, 2019.

40.   At no time did Ruthen, Stevens or Jordan advise Georgiou, GFT, or any other representative of GFT, that the Shaw Factory had been re-conveyed to Shaw.

41.   By signing a Deed in Lieu of Foreclosure as BHR's purported manager, Ruthen was relieved of his personal guaranty on the Shaw note.

42.   Shaw accepted the Deed in Lieu of Foreclosure without ascertaining Ruthen's authority to execute the document on behalf of BHR. In December of 2019, Shaw sold the property to a third party.

43.   At no time did Ruthen seek Georgiou permission as an owner of BHR,  to transfer title of the property to Shaw.

44.   Plaintiffs have been damaged in the amount of $5 million or more according to proof at time of trial.

45.   Defendants and each of them agreed to commit the acts alleged herein by planning and forming a conspiracy to commit the acts alleged herein. Plaintiffs believe that at all times mentioned herein, each wrongful act by Defendants as alleged was done in furtherance of a common design, plan and scheme.  Accordingly, each Defendant

conspirator is liable, regardless of the degree of his or her or its activity or relative culpability.

46.     As a direct and proximate result of Defendants' conspiracy to commit the acts alleged herein, Plaintiffs have been damaged in an amount to be proven at the time of trial.

**CLAIM FOR RELIEF I.**

**For Violation of Section 10(b) of**

**the Exchange Act and SEC Rule 10b-5**

**(Against Ruthen, Stevens and Jordan)**

47.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 46 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

48.     Ruthen and Jordan: (a) knew or recklessly disregarded material nonpublic information about the Membership structure and control of BHR which was not disclosed to Plaintiffs; and (b) delivered, drafted, reviewed, and/or approved misleading statements about the control and structure of BHR.

49.     The true facts include that Ruthen, and Jordan never intended to dissolve BHR of Georgia, and after BHR of Nevada was formed never intended to allow Georgiou to control BHR as its sole Manager.

50.     Ruthen and Jordan, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading, contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.     Ruthen and Jordan have thus violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated under the Act in that in connection with the sale of a security they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit on Georgiou and GFT in connection with their purchases of BHR securities.

52.     Georgiou and GFT have suffered substantial damages as a result of the wrongs alleged in this Count I in an amount to be proved at trial.

## CLAIM FOR RELIEF II.

### For Violation of NRS 90.295

### (Against Ruthen, Stevens and Jordan)

53.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 52 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

54.     The Plaintiff's offer to sell membership units in BHR together with its investment in the Shaw Factory as embodied in the term sheet presented by Ruthen, Jordan and Stevens constitute an offer to sell a Security under Nevada Law.  The term "Security" is broadly defined by NRS 90.295 to include a note, stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in a profit-sharing agreement, a limited partnership interest, an interest in a limited-liability company, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, viatical settlement investment, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in an oil, gas or other mineral lease or in payments out of production of such a lease, right or royalty, a put, call, straddle or option on a security, certificate of deposit or group or index of securities including any interest therein or based on the value of any of the foregoing, or, in general, any interest or instrument commonly known as a security or any certificate of interest or participation in, temporary or interim certificate for, receipt for, whole or partial guarantee of or warrant or right to subscribe to or purchase any of the foregoing.

55.     NRS 90.570 states that "[i]n connection with the offer to sell, sale, offer to

purchase or purchase of a security, a person shall not directly or indirectly: (1) Employ any device, scheme or artifice to defraud; (2) Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or (3) Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person."

56.     The Defendants, in connection with the offer to sell a Security, did employ a scheme to defraud the Plaintiffs by making material misrepresentations to get them to invest without providing any of the value or services promised.

57.     Among their other misrepresentations and breaches of fiduciary duty, Ruthen and Jordan misrepresented to Georgiou the degree of control he would have over BHR.  Sevens misrepresented the delivery of a lease to the Shaw Factory by SSP.

58.     As a result of Defendants' conduct as alleged herein, the Plaintiffs have been damaged in an amount in excess of Ten Thousand Dollars ($100,000.000.00).

59.     The Plaintiffs have also been forced to expend attorney's fees to recover funds and is therefore entitled to recover investigation costs, costs of suit, and attorney's fees.

### CLAIM FOR RELIEF III
### Breach Of Fiduciary Duty
### (As To Defendants Jordan And Ruthen)

60.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 59 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

61.     At all times pertinent to this complaint, Plaintiffs reposed complete confidence and trust in Defendants to handle BHR and the acquisition of the Shaw Factory in accordance with Plaintiff's stated investment and management objectives.  The joint venture relationship between the parties and the fact that Ruthen and GFT were both Members in BHR gave rise to a fiduciary duty on the part of Defendants to Plaintiff.

62.     In addition, Jordan, as an attorney who advised Georgiou and GFT, owed to Plaintiffs a fiduciary duty.

63.     By reason of their positions as officers, directors, agents, counsel and/or fiduciaries of BHR and because of their ability to control the business and corporate affairs of BHR, Jordan and Ruthen owed Georgiou, GFT and BHR fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control, manage, represent, and act on behalf of BHR and Georgiou in a fair, just, honest, and equitable manner.

64.     Both Jordan and Ruthen were required to act in furtherance of the best interests of BHR, Georgiou and BHR's members and not in furtherance of their own personal interest or benefit.

65.     Jordan and Ruthen had a duty to promptly disseminate accurate and truthful information to Georgiou regarding BHR and its business dealings.

66.     Jordan and Ruthen, because of their positions of control and/or authority, were able to and did, directly and/or indirectly, fraudulently exercise control over the wrongful acts complained of herein.

67.     To discharge their duties, Jordan and Ruthen were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of BHR. By virtue of such duties, they were required to, among other things: (a) refrain from acting upon material inside corporate information to benefit themselves; (b) ensure that BHR complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to Georgiou; (c) prevent BHR from entering into business relationships with unscrupulous individuals and entities and/or to the detriment of BHR or its members to include Georgiou; (d) conduct the affairs of BHR in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting BHR's assets, and to maximize the value of BHR and its interests;  (g) ensure that BHR was operated in a diligent, honest,

and prudent manner in compliance with all applicable laws, operating agreements, rules, and regulations; and/or (h) make any and all necessary disclosures of all business opportunities, leases, agreements, and profits of BHR to its members.

68.     Jordan and Ruthen's conduct, as complained of herein, involves a knowing and culpable violation of their fiduciary obligations, the absence of good faith on their part, and a reckless disregard for their fiduciary duties.

69.     Jordan and Ruthen breached fiduciary duties owed to Plaintiffs by failing to file all necessary paperwork with the Nevada Secretaries of State reflecting the agreement to convert BHR to a Nevada LLC, listing Georgiou as the agent for service of process of BHR, and as sole Manager of BHR.  Ruthen and Jordan also allowed BHR's status in Nevada to be revoked and its status in Georgia to be dissolved.

70.     Ruthen also breached his fiduciary duties to Plaintiffs by failing to provide a lease from SSP, or $1.3M for equipment and improvements.

71.     Ruthen breached his fiduciary duties by fraudulently signing as Manager of BHR and executing a Deed in Lieu of Foreclosure, to transfer the Shaw Factory back to Shaw, which gained for him a unique advantage over and above the best interests of the Plaintiffs, by releasing Ruthen's personal guaranty of the note.

72.     Ruthen failed to advise Georgiou, BHR, GFT, or any other representative of GFT, that he had re-conveyed the property to Shaw, and as such breached his fiduciary duty of candor.

73.     Ruthen continued to breach his fiduciary duties by falsely representing that he was paying interest payments to Shaw in accordance with the terms of the promissory note, when his debt was relieved through the execution of the Deed in Lieu of Foreclosure.

74.     As a result of Defendants' breach of their fiduciary duties, Plaintiffs have suffered economic detriment and damage in an amount to be determined at trial.  In addition, Ruthen and Jordan's conduct as described herein evidences malice, fraud and extreme self-dealing, all of which justify the award of punitive and exemplary damages

in an amount according to proof at trial.

**CLAIM FOR RELIEF IV**

**Fraud – Intentional And**

**Negligent (Including Concealment)**

**(As To All Defendants Except Jordan And Shaw)**

75.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 74 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

76.     Defendants made several misrepresentations including the ones described with particularity above.  Plaintiffs allege that Defendants knowingly, willfully, and/or with reckless disregard for their falsity made these misrepresentations with the intent to defraud Plaintiffs and with the intent of inducing Georgiou to invest in BHR and to agree to the purchase of the Shaw Factory.

77.     The representations made by Defendants to induce reliance were false and Defendants knew that the representations were false when they made them.

78.     Plaintiffs allege that Ruthen had no intention of ever making Georgiou a member in BHR, making Georgiou the sole manager of BHR, disclosing all business opportunities or profits of BHR to Georgiou, or providing Georgiou any authority to make or participate in decisions concerning BHR's property or business.

79.     Defendant SSP had no intention of paying rent to BHR or paying for the improvements promised.

80.     Defendants intended for Plaintiffs to rely on their false representations.

81.     Plaintiffs reasonably and justifiably relied on Defendants' representations.

82.     As a proximate result of Defendants' fraudulent representations and Plaintiffs' reasonable reliance on them, Plaintiffs suffered injury.

83.     Plaintiffs have been damaged in an amount of $5 million or more according to proof at time of trial.

84.     Defendants' conduct as described herein evidences malice, fraud and

extreme self-dealing, all of which justify the award of punitive and exemplary damages in an amount according to proof at trial.

**CLAIM FOR RELIEF V**

**Breach Of Contract**

**(Count One)**

**(As To Defendant Ruthen Only )**

85.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 84 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

86.     Plaintiff Georgiou and Defendant Ruthen had valid agreements as indicated above herein, which Defendant Ruthen breached as more fully described herein.

87.     Plaintiffs believe and thereon allege that they have been damaged in the amount of $5 million or more according to proof at time of trial.

**CLAIM FOR RELIEF VI**

**Breach Of Contract**

**(Count Two)**

**(As To Defendant Shaw Only )**

88.     Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 87 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

89.     BHR and Shaw had valid written contracts for the purchase and sale of the Shaw Factory to BHR.  Shaw breached that agreement by foreclosing on the property and taking back same without BHR's approval.

90.     BHR had at all times relevant fully performed on its obligations under the purchase and sale agreement and promissory note and was not in breach of either at the time that Shaw's took back the Shaw Factory by accepting the Deed in Lieu.

91.     Shaw's denial of the benefits of its agreements with BHR as to BHR's ownership, use and quite enjoyment of the Shaw Factory amounts to a breach of contract.

92.    Defendant, Shaw is therefore in breach of its obligations under its contracts with BHR.

93.    Plaintiffs believe and thereon allege that they have been damaged in the amount of $5 million or more according to proof at time of trial.

## CLAIM FOR RELIEF VII

### Breach Of Contract

### (Count Three)

### (As To Defendant SSP Only)

94.    Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 93 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

95.    BHR and SSP had a valid agreement for lease of the Shaw Factory as indicated above herein.

96.    SSP never made any rent payments to BHR and never provided $1.3 million for equipment and improvements as promised.

97.    Defendant SSP breached that contract as indicated herein.

98.    Plaintiffs believe and thereon allege that they have been damaged in amount of $2 million or more according to proof at time of trial.

## CLAIM FOR RELIEF VIII

### Rescission

### (As To Defendant Ruthen Only)

99.    Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 98 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

100.  As a consequence of Defendant Ruthen's breaches of contract, and misrepresentations, Georgiou and GFT will continue to suffer substantial harm and injury under the agreements made with Ruthen. Georgiou and GFT will lose the money paid to Ruthen under the agreements without having received any benefit thereby.

101.   Georgiou thereby seeks the return of his investment and all monies paid to Ruthen to invest in BHR.  He seeks a rescission  as to all agreements with Ruthen for the purchase and investment in BHR.

## CLAIM FOR RELIEF IX

### Negligence

### (As To Defendants Ruthen, Jordan And Shaw)

102.   Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 101 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

103.   Defendants owed a duty of care to BHR.  Jordan and Ruthen owed a duty of care to BHR with respect to their dealings, business, and representations.

104.   Shaw had a duty, prior to accepting the Deed in Lieu of Foreclosure, to ascertain the authenticity of Ruthen as signatory and Ruthen's authority to act on behalf of BHR and/or convey the Shaw Factory back to Shaw.

105.   Defendants breached their duties of care to BHR.  In particular, Ruthen and Jordan were negligent in ascertaining whether BHR had an obligation under BHR's agreements with Shaw to return the Shaw Factory back to Shaw.

106.   Defendant, Shaw was negligent in not having ascertained whether Ruthen was authorized to transfer the Shaw Factory to it via a Deed in Lieu.

107.   Defendants, and each and all of them, carelessly and negligently  acted as alleged herein.

108.   Defendants also knew that their acts, conduct and/or omissions would, and in fact did, cause harm, damages and injuries to the Plaintiffs.

109.   As a further direct and proximate result of the negligent acts, omissions and conduct of the Defendants and its agents, and the injuries caused to Plaintiffs, Plaintiffs sustained loss of business, loss of profits, loss of property ownership, and other damages.

110.   Plaintiffs believe and thereon allege that they has been damaged in the amount of $5 million or more according to proof at time of trial.

## CLAIM FOR RELIEF X

### Accounting

### (As To Defendants Ruthen, Jordan, And Shaw Only )

111.    Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 95 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

112.    Jordan, Ruthen and Shaw have wrongfully withheld and failed to disclose rents, profits, properties, assets, and all business transactions that they wrongfully obtained or participated in which belonged to BHR and about which both BHR and Georgiou had a right to know.

113.    The amount of money owed to BHR and/or Georgiou as well as the transactions related thereto are unknown to Plaintiffs and cannot because of the fraud of Jordan, Ruthen and Shaw be ascertained without an accounting of the books and records of BHR  and all dealings and transactions of Jordan, Ruthen, and Shaw in relation to BHR from February 2018 to the present.

114.    Plaintiffs demand an accounting be taken of all dealings and transactions of Jordan, Shaw, and Ruthen in relation to BHR from February 1, 2018, through present.

115.    Plaintiffs further demand an accounting of any other appropriate financial matter that needs to be accounted for in the parties' relationship from the date BHR was formed or from such time as permitted by law.

## CLAIM FOR RELIEF XI

### Fraudulent Transfer

### (As To Defendants Ruthen, Jordan, And Shaw Only)

116.    Plaintiffs incorporate as though fully set forth herein the allegations contained above in Paragraphs 1 through 116 of this Complaint as well as all allegations stated below in each claim for relief in the Complaint.

117.    Based on the factual allegations above, Jordan, Ruthen and Shaw directed that the Shaw Factory, which rightfully belonged to BHR, be transferred or sold to third

parties without the knowledge, authority or permission of BHR or Georgiou.

118.   Accordingly, Plaintiffs seek to recover as fraudulent transfers of BHR assets, including all funds, rents, profits, assets and property received by or sold by Defendants Jordan, Shaw, and Ruthen.

119.   Plaintiffs therefore request that the Court order Defendants Jordan, Shaw and Ruthen, jointly and severally, pay to Plaintiffs all fraudulent transfers of funds they received and to void the sale of the Shaw Factory to Cicerone as alleged herein and as further shown by proof at trial.

120.   Plaintiffs further ask that they be awarded pre-and post- judgment interest from these Defendants from the date of the receipt of each fraudulent transfer, including the necessity of retaining counsel to prosecute these claims for which the plaintiffs should be reimbursed.

**WHEREFORE**, Plaintiffs pray for relief and judgment as follows:

1.   For an award of actual and compensatory damages in an amount to be proven at trial.

2.   For restitution of all money wrongfully obtained by Defendants by means of and in connection with the alleged wrongful, unfair, and fraudulent conduct and business practices alleged herein.

3.   For punitive and exemplary damages according to proof;

4.   For damages in the amount of $5 million or more according to proof;

5.   Pre-and post-judgment interest on its damages, together with all costs and expenses;

6.   Attorney's fees and costs of suit; and,

7.   Awarding such other relief as this Court may deem just and proper.

**MURCHISON & CUMMING, LLP**

DATED: June 4, 2021

_____/s/R. SCOTT RASMUSSEN_____
R. SCOTT RASMUSSEN
Attorney for Plaintiff

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all claims so triable.

**MURCHISON & CUMMING, LLP**

DATED:  June 4, 2021

_____/s/R. SCOTT RASMUSSEN_____
R. SCOTT RASMUSSEN
Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*COMPLAINT*